UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

THOMAS FRAMPTON,

    *Plaintiff*,

v.

CITY OF BATON ROUGE,
SHARON WESTON BROOME, *in her official capacity as Mayor of Baton Rouge*, and MURPHY J. PAUL JR., *in his official capacity as Chief of the Baton Rouge Police Department*,

    *Defendants*.

## **COMPLAINT**

    1.    Plaintiff Thomas Frampton, lawyer and a professor of law, represented Clarence and Tanya Green in a civil rights damages suit against the City of Baton Rouge (hereinafter "City") regarding what this Court called a "serious and wanton disregard" of the Greens' constitutional rights by the Baton Rouge Police Department (hereinafter "BRPD").

    2.    In May 2021, Attorney Frampton settled the case with the City.

    3.    On May 27, 2021, The *CBS Evening News* ran a story pertaining to BRPD's conduct.[1]

    4.    The very next day, the Defendant City filed a petition on behalf of itself and the Baton Rouge Police Department seeking to jail Mr. Frampton for contempt of juvenile court, alleging that he released the records of a juvenile criminal proceeding without authorization.

    5.    But no such juvenile criminal proceeding ever existed.

---

[1] Jeff Pegues, *[Baton Rouge reaches $35,000 settlement with family after police strip-searched teen and entered home without warrant](#)*. CBS News, May 27, 2021.

6. Moreover, the videos were already public, having been were produced to Mr. Clarence Green in an adult criminal proceeding in this Court. *USA v. Green,* 20-cr-00046-BAJ-SDJ (M.D. La.).

7. Portions of the video were filed into the electronic public record in this Court in *USA v. Green,* 20-cr-00046-BAJ-SDJ (M.D. La.), Rec. Doc. 26.

8. Defendants explained in their petition that they took action against Mr. Frampton because of the "negative correspondence from the public" after the story aired on CBS.

9. This is First Amendment retaliation in violation of the Constitution, that threatens to chill the speech of not only Frampton and the Green Family, but any critic of the BRPD or the City.

10. Mr. Frampton asks that this Court issue an order prohibiting Defendants from retaliating against him for the exercise of his constitutional rights.

## I.     JURISDICTION

11. Plaintiff's claims arise under the laws of the United States and Louisiana. This Court has jurisdiction over Plaintiff's claims of federal rights violations, which are brought pursuant to 42 U.S.C. § 1983. This Court has supplemental jurisdiction over Plaintiff's Louisiana state law claims in accordance with 28 U.S.C. § 1367.

12. The venue is proper in the Middle District of Louisiana under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in City of Baton Rouge, situated in the Middle District of Louisiana.

## II.    THE PARTIES

13. Plaintiff **THOMAS FRAMPTON** is of suitable age and capacity to file this suit. He is an Associate Professor of Law at the University of Virginia School of Law. Professor Frampton studies criminal law and constitutional criminal procedure with a focus on how legal actors, institutions and doctrines have responded, or failed to respond, to the dramatic expansion of the carceral state. He is a resident of Virginia.

2

14. Defendant **CITY OF BATON ROUGE** is a political subdivision of the State of Louisiana. The city's governing authority is consolidated with the government of **EAST BATON ROUGE PARISH**. ("**CITY**.") The City is the entity that filed a petition seeking to jail Mr. Frampton for his release of public video documenting misconduct by Baton Rouge police. City attorneys are enforcing a City agenda of retaliation against Frampton, on behalf of the City itself and the Police Department.

15. Defendant **SHARON WESTON BROOME** is an individual of the age of majority, and on information and belief is a resident the City/Parish of Baton Rouge. She is the Mayor of Baton Rouge, and as such she is the chief executive and final policymaker for the City of Baton Rouge and the Baton Rouge Police Department. Mayor Broome finalizes policies and practices of the police department, and she is the final policymaker as to what legal actions the City Attorney's office pursues on behalf of the City. She also is the final policymaker and has decision-making authority as to what actions the City and its subdivisions take against Professor Frampton. She received the ACLU letter described herein and chose not to withdraw the contempt petition against Professor Frampton.[2] She is sued in both her individual and official capacities.

16. Defendant **MURPHY J. PAUL JR.** is Chief of the Baton Rouge Police Department. As such, he is the final policymaker for the Baton Rouge Police Department, and a final policymaker as to what legal action shall be initiated by BRPD, and what actions BRPD shall take in response to Plaintiff Frampton's speech. Defendant Paul is the supervisor of the staff at the center of Frampton's speech, and, as final policymaker for the Baton Rouge Police Department, he made the decision to file a petition seeking to jail Mr. Frampton for speech that was unflattering to his staff and colleagues. The legal action taken against Frampton was brought

---

2 Ex. C.

3

in the name of the Police Department, and PAUL, as final policymaker for the Department, is the individual instructing City actors to pursue Frampton.

### III.   FACTS

17. On January 1, 2020, Plaintiff Clarence Green and his younger brother (a juvenile) were passengers in a car in Baton Rouge, Louisiana.

18. Baton Rouge Police Officers Ken Camallo and Troy Lawrence stopped the car, placed Mr. Green and his brother on the concrete, handcuffed them, and searched their persons.

19. Camallo and Lawrence then drove Mr. Green and his younger brother to a private residence where Plaintiff Tanya Green and her juvenile son reside.

20. With Clarence and his little brother handcuffed in the back of a police car, Camallo and Lawrence entered the residence without warrant or other authorization.

21. With gun drawn, they proceeded up to search the apartment before encountering Tanya Green.

22. Clarence Green was arrested and indicted by a federal grand jury.[3]

23. His juvenile brother was released without being booked or charged.

24. No juvenile criminal proceedings were instituted against the juvenile brother of any sort.

25. On August 24, 2020, Mr. Green's federal public defender filed a motion to suppress.

26. Body camera footage of the stop was entered into the public record as evidence in support of the motion to suppress.[4]

27. On November 20, 2020, an evidentiary hearing was conducted and Camallo testified.

---

3 *USA v. Green,* 20-cr-00046-BAJ-SDJ (M.D. La.)
4 *Id.*, R. Doc. 26 (electronic exhibits).

28. At the evidentiary hearing, Camallo gave "multiple conflicting accounts"[5] when describing the circumstances leading up to the traffic stop, and failed to offer a satisfactory explanation for why the police reports in this investigation were revised nearly one dozen times in the months following the arrest.

29. On December 16, 2020, the United States advised the Court that "[a]fter . . . reviewing the official transcript [of the hearing], the United States is re-evaluating this case and needs additional time to evaluate whether an alternate resolution is appropriate."[6]

30. On December 24, 2020, the United States asked to dismiss the indictment.

31. On December 29, 2020, the Court granted the Government's motion and ordered Mr. Green immediate release. The Court noted, however, that:

> As reflected in the video evidence submitted in support of Defendant's Motion to Suppress (Doc. 12), the state agents in this case demonstrated **a serious and wanton disregard for Defendant's constitutional rights**, first by initiating a traffic stop on the thinnest of pretext, and then by haphazardly invading Defendant's home (weapons drawn) to conduct an unjustified, warrantless search. Such an intrusion, in abject violation of the protections afforded by the Fourth Amendment of the United States Constitution, which protects citizens against unwarranted governmental intrusions in their homes, may justifiably be considered to be a trespass subject to prosecution under La. R.S. 14:63.[7]

32. On January 1, 2021, Clarence Green and Tanya Green filed a civil suit, *Green v. Camallo*, 21-cv-00001-JWD-EWD (M.D. La.), alleging constitutional violations, trespass, false imprisonment, and the manufacturing of false evidence.[8]

33. The Advocate independently obtained the body camera footage from *USA v. Green,* and published a story describing it.[9]

---

5 *Id.*, R. Doc. 35 at n. 1.
6 *Id.*, R. Doc. 34 at 1.
7 *Id.* at 35, n. 1 (emphasis added).
8 *Green v. Camallo*, 21-cv-00001, (M.D. La.) R. Doc. 1.
9 See John Simerman and Lea Skene, *Federal judge voids gun charges, calls bad BRPD bust a 'foul' against justice system*, BATON ROUGE ADVOCATE, Jan. 12, 2021 ("But Camallo's bodycam video shows him pushing open the apartment door and walking inside with another officer . . . .").

34. By May 14, 2021, the parties settled Plaintiffs' claims and moved to dismiss the case.[10]

35. Plaintiff's civil claims were dismissed on May 17, 2021.[11]

36. Following the settlement, the Green Family shared body-worn camera footage of the BRPD officers' action with news media through their attorney Plaintiff Thomas Frampton.

37. The footage was released at the behest of and with the consent of all concerned members of the Green Family.

38. This footage—which documents their mistreatment by BRPD—was initially provided by the U.S. Attorney to Clarence Green as discovery in his (adult) criminal prosecution.

39. On May 27, 2021, BRPD's mistreatment of the Green Family first became a national news story.

40. The CBS Evening News ran a story entitled "Baton Rouge reaches $35,000 settlement with family after police strip-searched teen and entered home without warrant."[12]

41. The news story included body-worn camera footage that had already been a public record by that point for nearly six months.[13]

42. The day after the CBS story, Defendants CITY and PAUL filed a petition on behalf of Defendant City and the BRPD in juvenile court, entitled "Petition to Disclose Portion of Records Concenring [*sic*] a Matter Before Juvenile Court Pursuant to La CH.C. [*sic*] Art 412 With Rule to Show Cause." ("Contempt Petition")[14]

43. The Petition has a line for "Suit No." – but leaves that line blank, because there was no underlying juvenile court proceeding in which they were filing.

---

10 *Green v. Camallo*, 21-cv-00001, R. Doc. 10 (Joint Motion to Dismiss).
11 *Id.*, R. Doc. 11.
12 Available online at https://www.cbsnews.com/news/baton-rouge-police-teen-strip-searched-settlement/
13 *USA v. Green,* 20-cr-00046-BAJ-SDJ (M.D. La.), R. Doc. 26 (electronic exhibits).
14 Ex. A.

6

44. The Contempt Petition alleges that Mr. Frampton had "disseminated the [body worn camera] footage on media platforms without a court order in violation of Louisiana Children's Code Article 412(A).[15]

45. Article 412 (A) does not make **any** record related to a child confidential. It provides specifically that:

> Records and reports concerning all *matters or proceedings* before the juvenile court, except traffic violations, are confidential and shall not be disclosed except as expressly authorized by this Code.

La. Ch. C. art. 412(A) (emphasis added).

46. Defendants contend in their petition that by sharing body-worn camera obtained in discovery in an adult proceeding, Mr. Frampton was violating Art. 412.

47. That is impossible because there is not now – and has never been – any "matter or proceeding before the juvenile court" concerning the events depicted on the videos.

48. The juvenile in the video was not booked or charged with any crime.

49. But the Defendants' Petition explained that since the video was made public, "the City of Baton Rouge has received a substantial amount of negative correspondence from the public."[16]

50. The Defendants' Petition asked that Mr. Frampton be "held in contempt" under Louisiana Children's Code Arts. 412(A) and 1509, allowing for imprisonment of up to six months.[17]

51. Defendants served Mr. Frampton with the Contempt Petition at the precise moment that the Baton Rouge Police Department began a press conference responding to the CBS story.

---

15 *Id*. at ¶ 2.
16 *Id*. at ¶ 4.
17 *Id*. at 8.

7

52.     Having been electronically served with the Contempt Petition, Mr. Frampton immediately cancelled previously scheduled media interviews to respond to claims made at the BRPD conference.

53.     Mr. Frampton has since refrained from disseminating and publicizing additional body-worn camera footage that would rebut false claims made by Defendant Paul at the press conference as a direct result of the Contempt Petition.

54.     On May 28, 2021, counsel for Mr. Frampton and the Parish Attorney's office held a telephone meet and confer. Mr. Frampton's counsel asked if the Parish Attorney's office "thought the video had ever been part of any juvenile proceeding."[18]

55.     The Parish Attorney's representative responded no, she didn't think it had been, but she thought "it was perhaps *related* to a juvenile proceeding."[19]

56.     She did not identify that proceeding.

57.     No such proceeding exists.

58.     Nor did Defendants provided notice of their petition to the juvenile whose "records" might be unsealed, as would be required by Art. 412(E)(2), if that article applied – indicating that Defendants do not actually believe Art. 412 applied.

59.     On June 2, 2021, the ACLU of Louisiana sent a letter to the Parish Attorney asking that he withdraw the request for contempt.[20] The Parish Attorney did not respond.

60.     In the third week of June 2021, Camallo was notified that he was demoted from sergeant to corporal and was ordered to serve a 75-day unpaid suspension.[21]

61.     A hearing has been set on the Contempt Petition for July 12, 2021.[22]

**IV.    CLAIMS FOR RELIEF**

---

[18] Ex. B.
[19] *Id.*
[20] Ex. C.
[21] Lea Skene, *BRPD officer demoted and suspended over warrantless search that was lambasted by federal judge*. The Advocate, June 22, 2021.
[22] Ex. A at pg. 3.

## Count One – First Amendment Retaliation
### (All Defendants)

62. The First Amendment prohibits adverse governmental action taken against an individual in retaliation for protected First Amendment activities.

63. Frampton was engaged in protected First Amendment activity in releasing the videos of the BRPD engaged in an unconstitutional search of two young Black men. His actions constitute speech on an important matter of public concern and therefore are afforded a high level of protection from government interference.

64. The Defendants have engaged in adverse action in seeking to jail Professor Frampton for his release of the video. They seek to jail him for speech. There is no greater "adverse action" than the deprivation of one's personal liberty through incarceration.

65. This adverse action is being taken in retaliation for Mr. Frampton's speech, not for any other or legitimate government reason. The Defendants' petition in state court plainly states that the action is being taken in response to protected First Amendment activity (disseminating a video) and because of public reaction to the national news story. It does not seek to achieve any other government interest in privacy for children: indeed, the Defendants sought and obtained court permission to release *more* video of the youth involved in the stop. Their state court action for contempt is about punishing Mr. Frampton: nothing more.

66. These actions would chill the speech of a person of ordinary firmness, and in fact have chilled the speech of Professor Frampton, who cancelled additional media events after learning of the Defendants' retaliatory conduct. A court proceeding against a lawyer is a serious threat to that individual's liberty, but also to their licensure and career.

67. Defendants have sought to jail Professor Frampton for contempt for releasing the records of a juvenile court proceeding that never existed, in a court that had no jurisdiction over Frampton or the videos, for speech he engaged in at the behest of the individuals whose privacy

9

interests are implicated in the videos, regarding videos that were already properly in the possession of members of the public.

68. They did so one day after Professor Frampton exposed Baton Rouge police misconduct via a national news story.

69. They did so on the explicit rationale that "the City of Baton Rouge has received a substantial amount of negative correspondence from the public."[23]

70. Accordingly, Defendants violated Professor Frampton's right to free speech under the federal constitution.

### Count Two – Abuse of Process
### (All Defendants)

71. A state-law abuse of process claim has two essential elements: (1) the existence of an ulterior purpose and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding.

72. Ulterior motive is presumed when there is a finding of an irregular use of process.

73. Here, Defendants engaged in an irregular use of process.

74. They invented a "Petition to Disclose Portion of Records Concenring [*sic*] a Matter Before Juvenile Court Pursuant to La CH.C. [*sic*] Art 412 With Rule to Show Cause."

75. In that petition, they seek to jail Professor Frampton for contempt of a juvenile proceeding that never existed.

76. If that proceeding *had* existed, Defendants would have filed the petition in that matter – rather than inventing a *sui generis* caption. There was no proceeding or court order of which Frampton was in contempt.

77. Defendants knew they were not following Art. 412, as they did not follow the required notice procedure of Art. 412(E)(2) that would apply if Art. 412 actually governed.

---

[23] *Id.* at ¶ 4.

10

78. Defendants acted with the ulterior purpose of chilling Professor Frampton's speech and retaliating against him for the exercise of his free speech.

### Count Three - Violation of the Louisiana Constitution
### (All Defendants)

79. Defendants' actions as described above interfered with Professor Frampton's exercise of fundamental rights as guaranteed by Article 1, §7 of Louisiana's Constitution.

### IV.   RELIEF REQUESTED

80. Plaintiff requests judgment be entered against Defendants and that the Court grant the following:

   a. A preliminary injunction directing Defendants to cease their retaliation against Professor Frampton;

   b. A permanent injunction directing Defendants to cease any action retaliating against Professor Frampton, or seeking to restrain anyone—including Mr. Frampton's clients, the Green Family—from releasing material documenting behavior of the Baton Rouge Police Department;

   c. Declaratory relief;

   d. Judgment against Defendants for Plaintiff's asserted causes of action;

   e. Award of costs and attorney's fees; and

   f. Order such other and further relief, in equity, to which Plaintiff may be justly entitled.

81. Plaintiff reserves the right to amend his Complaint, pursuant to the Federal Rules Civil Procedure, upon favorable termination of the contempt proceeding, to allege malicious prosecution and add a prayer for compensatory and punitive damages.

Respectfully submitted,

Plaintiff, by counsel,

*/s/ William Brock Most*
William Most (La. Bar No. 36914)
Most & Associates
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023
williammost@gmail.com

11

Katie Schwartzmann (La. Bar No. 30295)
Tulane University School of Law
First Amendment Law Clinic
6329 Freret Street
New Orleans, La 70130
Ph: (504) 862-8813
kschwartzmann@tulane.edu

Jane C. Hogan (La. Bar. No. 35172)
Hogan Attorneys
310 North Cherry Street
Hammond, La 70401
Ph : (985) 542-7730
Fax : (985) 542-7756