UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

THOMAS FRAMPTON,

    *Plaintiff*,

v.

CITY OF BATON ROUGE, *et al.*

    *Defendants*.

Case No. 21-cv-00362-BAJ-SDJ

**Memorandum in Support of Motion for Preliminary Injunction**

Comes now Plaintiff Thomas Frampton, by counsel, to request that this Court issue a preliminary injunction against Defendants' course of retaliatory conduct towards Mr. Frampton.

Plaintiff Thomas Frampton, an attorney and professor of law, represented Clarence and Tanya Green in a civil rights suit in this Court against the City/Parish of Baton Rouge (hereinafter "City"). The suit addressed what this Court called a "serious and wanton disregard" of the Greens' constitutional rights by BRPD.

In May 2021, the Green Family settled the case with the City.

On May 27, 2021, BRPD's conduct became a national story on The *CBS Nightly News*.[1]

The very next day, Defendants filed a petition in juvenile court seeking to <u>fine or jail Mr. Frampton for contempt of court</u>, alleging that he released the records of a juvenile criminal proceeding without authorization.

But no such juvenile criminal proceeding <u>ever existed</u>. And the videos in question had been in the public record since November 2020.

Defendants explained in their petition that they took action when they did because of the "negative correspondence from the public" after the story aired on CBS.

---

[1] Jeff Pegues, *[Baton Rouge reaches $35,000 settlement with family after police strip-searched teen and entered home without warrant](#)*. CBS News, May 27, 2021.

1

This is First Amendment retaliation. Mr. Frampton asks that this Court issue a preliminary injunction requiring Defendants to withdraw their request for contempt.

### I. Factual and Procedural Background

On January 1, 2020, Plaintiff Clarence Green and his younger brother (a juvenile) were passengers in a car in Baton Rouge, Louisiana. Baton Rouge Police Officers Ken Camallo and Troy Lawrence stopped the car, placed Mr. Green and his brother on the concrete, handcuffed them, and searched their persons. Camallo and Lawrence then drove Mr. Green and his younger brother to a private residence where Plaintiff Tanya Green and her juvenile son reside.

With Clarence and his little brother handcuffed in the back of a police car, Camallo and Lawrence entered the residence without warrant or other authorization. With Camallo's gun drawn, they proceeded up to the second floor of the apartment, where they encountered Tanya Green.

Clarence Green was arrested and indicted by a federal grand jury.[2] His juvenile brother was released without being booked or charged. No juvenile criminal proceedings were instituted against the juvenile brother of any sort.

Body camera footage documenting the BRPD mistreatment of the Green Family was provided by the U.S. Attorney to Clarence Green as discovery in his (adult) criminal prosecution. The video thereby became Mr. Green's — with no restrictions on his use of that material.[3]

On August 24, 2020, Mr. Green's federal public defender filed a motion to suppress. Body camera footage of the stop was entered into the public record as evidence in support of the motion to suppress.[4]

On November 20, 2020, an evidentiary hearing was conducted before this Court, and officer Camallo testified. At the evidentiary hearing, Camallo gave "multiple conflicting

---

2 *USA v. Green,* 20-cr-00046-BAJ-SDJ (M.D. La.)
3 *Id*. at ¶¶ 3-4.
4 *USA v. Green,* R. Doc. 26 (electronic exhibits).

2

accounts"[5] when describing the circumstances leading up to the traffic stop, and failed to offer a satisfactory explanation for why the police reports in this investigation were revised nearly one dozen times in the months following the arrest.

On December 24, 2020, the United States asked to dismiss the indictment. On December 29, 2020, the Court granted the Government's motion and ordered Mr. Green immediate release. The Court noted, however, that:

> As reflected in the video evidence submitted in support of Defendant's Motion to Suppress (Doc. 12), the state agents in this case demonstrated **a serious and wanton disregard for Defendant's constitutional rights**, first by initiating a traffic stop on the thinnest of pretext, and then by haphazardly invading Defendant's home (weapons drawn) to conduct an unjustified, warrantless search. Such an intrusion, in abject violation of the protections afforded by the Fourth Amendment of the United States Constitution, which protects citizens against unwarranted governmental intrusions in their homes, may justifiably be considered to be a trespass subject to prosecution under La. R.S. 14:63.[6]

On January 1, 2021, Clarence Green and Tanya Green filed a civil suit, *Green v. Camallo*, 21-cv-00001-JWD-EWD (M.D. La.), alleging constitutional violations, trespass, false imprisonment, and the manufacturing of false evidence.

By January 12, 2021, the Advocate had independently obtained the body camera footage from *USA v. Green,* and published a story describing it.[7]

By May 14, 2021, the parties settled the Green Family's claims and moved to dismiss the case.[8] Those civil claims were dismissed on May 17, 2021.[9]

Following the settlement, the Green Family shared body-worn camera footage of the BRPD officers' action with news media through their attorney Professor Thomas Frampton.[10]

---

5 *Id.*, R. Doc. 35 at n. 1.
6 *Id.* at 35, n. 1 (emphasis added).
7 See John Simerman and Lea Skene, *Federal judge voids gun charges, calls bad BRPD bust a 'foul' against justice system*, BATON ROUGE ADVOCATE, Jan. 12, 2021 ("But Camallo's bodycam video shows him pushing open the apartment door and walking inside with another officer . . . .").
8 *Green v. Camallo*, 21-cv-00001, R. Doc. 10 (Joint Motion to Dismiss).
9 *Id.*, R. Doc. 11.
10 Ex. D (Dec. of Thomas Frampton) at ¶ 6.

The footage was released at the behest of and with the consent of all concerned members of the Green Family.[11]

On May 27, 2021, BRPD's mistreatment of the Green Family first became a national news story. The CBS Evening News ran a story entitled "Baton Rouge reaches $35,000 settlement with family after police strip-searched teen and entered home without warrant."[12] The news story included body-worn camera footage that had already been a public record by that point for nearly six months.[13]

The day after the CBS story, Defendants filed a petition on behalf of Defendants City and Baton Rouge Police Department in juvenile court, entitled "Petition to Disclose Portion of Records Concenring [*sic*] a Matter Before Juvenile Court Pursuant to La CH.C. [*sic*] Art 412 With Rule to Show Cause." ("Contempt Petition")[14] The Contempt Petition alleged that Mr. Frampton had "disseminated the [body worn camera] footage on media platforms without a court order in violation of Louisiana Children's Code Article 412(A).[15]

But Article 412 (A) does not make **any** record related to a child confidential. It provides specifically that:

> Records and reports concerning all *matters or proceedings* before the juvenile court, except traffic violations, are confidential and shall not be disclosed except as expressly authorized by this Code.

La. Ch. C. art. 412(A) (emphasis added).

Defendants contend that by sharing body-worn camera obtained in discovery in an adult proceeding, Mr. Frampton was violating Art. 412.

---

11 *Id*. at ¶ 7.
12 Available online at https://www.cbsnews.com/news/baton-rouge-police-teen-strip-searched-settlement/
13 *USA v. Green,* 20-cr-00046-BAJ-SDJ (M.D. La.), R. Doc. 26 (electronic exhibits).
14 Ex. A.
15 *Id*. at ¶ 2.

That is impossible. There is not now – and has never been – any "matter or proceeding before the juvenile court" concerning the events depicted on the videos.[16]

The juvenile in the video was not booked or charged.

He was not subject to any matter or proceeding before the juvenile court whatsoever.

Defendants knew this, as the petition includes a line for "Suit No." – which has been left blank.[17]

Additionally, the records were already public, and Mr. Frampton represented the family whose interests were implicated in the video and released the video at their behest. In short, there was no confidentiality or privacy provision of juvenile court of which Mr. Frampton ran afoul.

Rather the Petition explained that since the video was made public, "the City of Baton Rouge has received a substantial amount of negative correspondence from the public."[18]

The Petition asked that Mr. Frampton be "held in contempt" under Louisiana Children's Code Arts. 412(A) and 1509, allowing for imprisonment of up to six months.[19]

Defendants served Mr. Frampton with the Contempt Petition at the precise moment that the Baton Rouge Police Department began a press conference responding to the CBS story.[20]

On May 28, 2021, counsel for Mr. Frampton and the Parish Attorney's office held a telephone meet and confer. Mr. Frampton's counsel asked if the Parish Attorney's office "thought the video had ever been part of any juvenile proceeding."[21]

The Parish Attorney's representative responded no, she didn't think it had been, but she thought "it was perhaps *related* to a juvenile proceeding."[22]

She did not identify that proceeding, as no such proceeding exists.

---

16 Ex. D at ¶ 2-3.
17 Ex. A at pg. 1.
18 Ex. A at ¶ 4.
19 *Id*. at 8.
20 Ex. D at ¶ 8.
21 Ex. B.
22 *Id*.

5

Nor did Defendants provided notice of their petition to the juvenile whose "records" might be unsealed, as would be required by Art. 412(E)(2), if that article applied – indicating that Defendants did not actually believe Art. 412 applied.

On June 2, 2021, the ACLU of Louisiana sent a letter to the Parish Attorney asking that he withdraw the request for contempt.[23] The Parish Attorney did not respond.

A hearing has been set on the Contempt Petition for July 12, 2021.[24]

## II. Standard of Review

A preliminary injunction is warranted if the movant demonstrates: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

## III. Analysis

### A. Plaintiff is Likely to Succeed on the Merits Because Defendants' Counsel's Conduct Constitutes First Amendment Retaliation.

To evaluate preliminary injunction requests, courts use "a bewildering variety of formulations of the need for showing some likelihood of success." 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 2948.3 (3d ed. 2021). Some courts require the movant to show that the likelihood of success on the merits is greater than fifty percent. *See, e.g.*, *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985). The Fifth Circuit, however, recognizes that a finding of 'substantial likelihood' does not require a finding of a fixed quantitative value. *Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir.1979). Rather, "a sliding scale can be employed, balancing the hardships associated with the issuance or denial of a preliminary injunction with

---

23 Ex. C.
24 Ex. A at pg. 3.

the degree of likelihood of success on the merits." *Id.* Thus, when the other factors weigh strongly in favor of an injunction, "a showing of some likelihood of success on the merits will justify temporary injunctive relief." *Productos Carnic, S.A. v. Cent. Am. Beef & Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980).

Regarding First Amendment retaliation, the "law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (First Amendment prohibits "adverse governmental action taken against an individual in retaliation" for protected activities.)

As a result, even some government actions that would be otherwise lawful become prohibited if in response to protected speech or petition. "Because government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that conduct or speech would otherwise be a lawful exercise of public authority." *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 688 (1996). The First Amendment thus bars officials' actions where they "caused [the speaker] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity" and were "substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *See Keenan*, 290 F.3d at 258.

Here, Defendants' actions implicate First Amendment retaliation, among other violations. This is made clear by the basic absurdity of the Contempt Petition. That petition purports to rely on La. Ch. C. art. 412. That article does not make all videos of all children confidential; it only makes records confidential if they are "concerning . . *matters or proceedings* before the juvenile court, except traffic violations." La. Ch. C. art. 412(A) (emphasis added).

Defendants' counsel contends that by sharing body-worn camera obtained in discovery in an adult proceeding, Mr. Frampton was violating Art. 412. That is impossible because there is not now – and has never been – any "matter or proceeding before the juvenile court" concerning

7

the events depicted on the videos. The juvenile in the videos was never subject to any proceeding before the juvenile court whatsoever. *See Mulloney v. United States*, 79 F.2d 566, 579 (1935) ("Criminal proceedings cannot be said to be brought or instituted until a formal charge is openly made against the accused, either by indictment presented or information filed in court, or at least by a complaint before a magistrate.")

Because there is no juvenile proceeding that the body-worn camera footage was "concerning," Mr. Frampton could not possibly have violated Art. 412.

Defendants were well aware of this fact, as they left the "Suit No." line blank on the petition, and invented a *sui generis* caption ("*In Re: BRPD File # 20-225 Records in Possession of Chief Murphy J. Paul Jr.*"), which makes no reference to any juvenile proceeding.

And Defendants do not appear to *actually* believe Art. 412 governs this matter, as they have not provided notice of their petition to the juvenile whose "records" might be unsealed, as would be required by Art. 412(E)(2), if that article applied.

Additionally, the records were <u>already public</u>. Footage of the searches had already been entered into the public record of this Court. *USA v. Green,* 20-cr-00046-BAJ-SDJ, R. Doc. 26 (M.D. La.).

And notably, Mr. Frampton released the videos in advocacy on behalf of the family whose privacy interests were implicated by the videos. Article 412 is intended to be a shield to protect the privacy of youth involved in criminal proceedings. The City's position herein flips the statute on its head: it seeks to use article 412 to silence a youth whose rights were violated by the BRPD and who is not involved in a criminal proceeding.

The First Amendment-retaliatory motivation behind Defendants' filing is evidenced by the fact that they moved for contempt less than twenty-four hours after CBS Evening News broadcast a story about the BRPD officers' actions. Their filing itself complains that "the City of Baton Rouge has received an [*sic*] substantial amount of negative correspondence from the public." *Cf. Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("A plaintiff can establish a

8

causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action . . . Here, we find that the passage of only six months between the dismissal of Espinal's lawsuit and an allegedly retaliatory beating by officers, one of whom . . . was a defendant in [a] prior lawsuit, is sufficient to support an inference of a causal connection."); *Woods v. Smith*, 60 F. 3d 1161 1166 (5th Cir. 1995) ("chronology of events" can provide inference of First Amendment retaliation). And Prof. Frampton received the court filing <u>during</u> a BRPD press conference on the topic. These circumstances — coupled with the fact that the City is moving for contempt of a proceeding that does not now exist and has never existed demonstrate retaliation for protected speech. Accordingly, the likelihood of success element is met here.

**B.     There is a Significant Threat of Irreparable Harm Because Defendants Seek to Jail Mr. Frampton.**

When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary." 11A Wright & Miller, Federal Practice & Procedure, § 2948.1. Freedom from imprisonment—from government custody, detention, and other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

Here, Defendants seek to jail Professor Frampton. They ask for contempt under Children's Code Art. 1509, which allows for imprisonment of up to six months.[25] Furthermore, Mr. Frampton is not a resident of Louisiana. He is a member of the faculty of the University of Virginia School of Law.[26] He would have to purchase a ticket and fly back to Louisiana for his

---

25 *Id*.
26 See https://www.law.virginia.edu/faculty/profile/twf7p/2914949

July 12, 2021 court hearing. Such proceedings could have implications for his employment and his legal licensure.

And the harm here is not only the risk of jail time and a fine. The harm is also the *threat* of those things, which chills Professor Frampton and his clients' speech. Professor Frampton's declaration explains that he "cancelled multiple planned media interviews where [he] had intended on responding to claims made by BRPD; this was a direct and immediate result of receiving the contempt petition." Ex. D. at ¶ 9. The chilling effect of the threat will continue until this Court issues an injunction against Defendants' conduct.

Due to the threat of imprisonment and other harms, the risk of irreparable harm element is met.

**C.    Balancing the Competing Claims of Injury Weighs Heavily in Mr. Frampton's Favor.**

Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).

Here, this element weighs indisputably in Mr. Frampton's favor. He faces potential prison time, and certain financial cost, if Defendants' counsel moves forward with their course of action. On the other hand, Defendants' counsel would obtain no benefit whatsoever – other than perhaps a vindictive pleasure – from continuing to seek to hold Mr. Frampton in contempt. There is no state interest at stake other than a purely punitive one, which does not outweigh Mr. Frampton's potential significant injury should the Defendants be allowed to continue to pursue their current course of conduct of retaliation. Thus, this element is met.

**D.    The Public Interest Supports the Entry of Preliminary Injunctive Relief**

"It is always in the public interest to prevent the violation of a party's constitutional rights." *Simms v. District of Columbia*, 872 F.Supp.2d 90, 105 (D.D.C. 2012) (collecting cases).

Here, there is a strong public interest in not allowing Defendants' counsel to carry out a nakedly retaliatory course of action that would serve to chill the speech of any who seek to speak out against the Baton Rouge Police Department.

**E.    *Younger* Abstention Does Not Bar This Case Because Contempt is Only a Criminal Proceeding Once a Sentence is Applied; and In Any Case This Matter Would Fall Within the *Younger* Exception for Bad Faith and Retaliatory Proceedings.**

In *Younger v. Harris*, the Supreme Court articulated a doctrine of abstention when the exercise of federal jurisdiction would interfere with ongoing state criminal proceedings. 401 U.S. 37, 91 (1971). *Younger* abstention is grounded in principles of equity, comity, and federalism. *Id*. at 43-44. The *Younger* doctrine establishes "a presumption that the federal courts should abstain in cases in which a state criminal proceeding is pending." *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984). *Younger* is no bar here, for two reasons.

First, because the proceeding against Professor Frampton is not yet a criminal proceeding. Under Louisiana law, a "contempt proceeding assumes the quality of a criminal or quasi-criminal proceeding only after a criminal sentence is imposed." *State v. Voorhies*, 56 So. 3d 1028 (La. App. 2nd 2010), *citing Swan v. Swan*, 35, 393 (La. App. 2d Cir. 12/7/01), 803 So. 2d 372 and *Fontana v. Fontana*, 426 So. 2d 351 (La. App. 2d Cir. 1983), writ denied, 433 So. 2d 150 (La. 1983). Because the proceeding is not yet criminal, *Younger* abstention is not yet triggered.

Second, even if the proceeding were criminal, *Younger* abstention "is overcome by a showing of bad faith or intent to harass. When the state in a criminal proceeding acts in bad faith or with the purpose of harassing the federal plaintiff, its actions are not 'legitimate activities'. . . Equitable relief by the federal court is warranted, because the federal plaintiff faces a risk of irreparable injury that is both 'great and immediate'." *Id.* at 1176-1177, see also *Younger* at 54 (noting that holding limited to absence of "bad faith, harassment, or any other unusual circumstance").

11

Thus, there exists a "exception to Younger abstention in which a state court action is brought in bad faith or for a retaliatory motive." *Word of Faith World Outreach Center Church, Inc. v. Morales*, 986 F.2d 962, 966 (5th Cir. 1993) (bad faith exception to *Younger* applied in a First Amendment context). In *Wilson v. Thompson*, the Fifth Circuit laid out the test for the bad faith *Younger* exception:

> The Court should consider whether the plaintiffs have shown, first, that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected, and, second, that the State's bringing of the criminal prosecution was motivated <u>at least in part</u> by a purpose to retaliate for or to deter that conduct. If the Court concludes that the plaintiffs have successfully discharged their burden of proof on both of these issues, it should then consider a third: whether the State has shown by a preponderance of the evidence that it would have reached the same decision as to whether to prosecute even had the impermissible purpose not been considered.

*Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979) (emphasis added).

Here, the first *Wilson* element is met as Professor Frampton's issuance of a press release regarding police misconduct is protected First Amendment speech.

And for the second prong, all Plaintiff need show at this stage is that the prosecution was motivated *at least in* part by a purpose to retaliate or to deter that conduct. In *Ramelli v. Zahn*, the court looked to the "the words of the Defendants and the timeline provide the necessary showing of retaliation." 20-1482 at *17 (E.D. La., July 14, 2020). Here, the words of the Defendants indicate retaliation, as they admitted that they took action because of "negative correspondence from the public" resulting from Professor Frampton's press release. And the timeline further shows retaliation. Although the videos had been in the public record for nearly six months, Defendants moved for contempt *the day after* the videos became a national news story. *Cf. Espinal, supra,* 558 F.3d at 129 ("six months" between events "sufficient to support an inference of a causal connection").

And ultimately, Defendants' retaliatory motive is indicated by the fact that they moved for contempt of a proceeding that they knew did not exist.

As the court in *Ramelli* noted with regard to retaliation: "That which looks like a duck, walks like a duck, and quacks like a duck, will be treated as a duck even though some would insist upon calling it a chicken." *Id.* So too here. *Younger* is no bar to injunctive relief.

**F.      Requested Relief**

Mr. Frampton asks that the Court order Defendants to cease their retaliatory behavior, specifically their continued pursuit of a petition for contempt which admits on its face that it was initiated in response to Mr. Frampton's speech and nothing else. This Court should order Defendants to withdraw that portion of their petition that seeks to hold Mr. Frampton in Contempt.

## IV.     Conclusion

For these reasons, Mr. Frampton respectfully requests that this Court grant this motion.

Respectfully submitted, Plaintiff, by counsel,

*/s/ William Most*
William Most (La. Bar No. 36914)
Most & Associates
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023
williammost@gmail.com

Katie Schwartzmann (La. Bar No. 30295)
Tulane University School of Law
First Amendment Law Clinic
6329 Freret Street
New Orleans, La 70130
Ph: (504) 862-8813
kschwartzmann@tulane.edu

Jane C. Hogan (La. Bar. No. 35172)
Hogan Attorneys
310 North Cherry Street
Hammond, La 70401
Ph : (985) 542-7730
Fax : (985) 542-7756
jane@hoganattorneys.com

13