## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**THOMAS FRAMPTON**

**CIVIL ACTION**

**VERSUS**

**NO.   3:21-CV-362-JWD-SDJ**

**CITY OF BATON ROUGE/PARISH OF EAST
BATON ROUGE, ET AL.**
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### CONSOLIDATED MEMORANDUM IN SUPPORT OF MOTION TO DISMISS UNDER FED.R.CIV.P. 12(b)(1) and 12(b)(6) and MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

NOW INTO COURT, through undersigned counsel, comes defendant, CITY OF BATON

ROUGE PARISH OF EAST BATON ROUGE, (referred hereafter as "City/Parish"), SHARON

WESTON BROOM, in her official capacity as Mayor of Baton Rouge, and MURPHY J. PAUL,

in his official capacity as Chief of the Baton Rouge Police Department who respectfully files this

memorandum in support of its Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R.

Civ. P. Due to substantial overlapping arguments, in the interest of judicial efficiency, the

memorandum in support has been consolidated with the opposition to the Motion for Preliminary

Injunction. For the foregoing reasons, the defendant's motion should be granted and the claims of

plaintiff Thomas Frampton against the defendants should be dismissed with prejudice.

### FACTUAL BACKGROUND

On May 28, 2021 Chief Murphy J. Paul, requested an Order of the Juvenile Court pursuant

to La.Child. Code art. 412 giving the Baton Rouge Police Department the authority to release body

camera and videos from BRPD incident report file number 20-225 depicting an arrest of a juvenile

incident which was provided for an *in camera* review to the Court.  Due to the public release of

edited BRPD body camera footage of the juvenile's arrest by attorney Thomas Frampton, BRPD

requested the release of additional limited and redacted sections of the body camera video footage

of the incident to demonstrate the reasons behind the officer's actions, which the Mr. Frampton's released footage failed to depict.  BRPD sought the release of such footage to address an exponential amount of negative correspondence from the public received as a result of Mr. Frampton's videos during a press conference held on May 28, 2021 and minimize the potential for civil unrest.  The Court granted the release of the requested limited footage hours prior to the conference on May 28, 2021.

In its Petition to Disclose Juvenile Records, the City/Parish additionally sought a Rule to Show cause why Mr. Frampton should not be held in contempt pursuant to Louisiana Children's Code art. 1509 as required by Louisiana Children's Code art 412 for his public release of the videos prior to seeking authorization with this Court.  The Judge granted this order and set the Rule to Show Cause hearing on July 12, 2021.  City/Parish has now requested the hearing be continued until after the plaintiff's preliminary injunction request in this Court has been resolved.

## APPLICABLE LAW AND ANALYSIS

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of a federal court to hear a case.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Lack of subject matter jurisdiction may determined based on the "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.*  The party asserting federal court subject matter jurisdiction bears the burden of proof that jurisdiction exists. *Id.*

Additionally, a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when a complaint fails to state a legally cognizable claim. When deciding a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the

light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations, quotation marks, and brackets omitted).  The requirement that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868, (2009) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).  A court must limit itself to the contents of the complaint when reviewing a Rule 12(b)(6) motion, including documents attached to or incorporated by the complaint, and matters of which judicial notice may be taken, including matters of public record. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)

Although Federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, certain extraordinary circumstances require abstention.  *Deakins v. Monaghan*, 484 U.S. 193, 203, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). *Deakins*, 484 U.S. at 203, 108 S.Ct. 523.  *Younger v. Harris* exemplifies one class of cases in which federal-court abstention is required.

In *Younger*, the Supreme Court held that when there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution.  *Younger v. Harris,* 401 U.S. 37, 39–41, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).  The doctrine is grounded in notions of comity and federalism and prevents unwarranted interference with state court criminal

proceedings. *La. Debating and Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1489 (5th Cir. 1995). "When a federal court is asked to interfere with a pending state prosecution, established doctrines of equity and comity are reinforced by the demands of federalism, which require that federal rights be protected in a manner that does not unduly interfere with the legitimate functioning of the judicial systems of the States." *Kugler v. Helfant*, 421 U.S. 117, 123 (1975), citing *Younger*, 401 U.S. at 44, 91 S.Ct., at 750.

Contrary to the plaintiff's argument, the Supreme Court jurisprudence has not limited the *Younger* abstention doctrine to state criminal proceedings. In subsequent decisions, the *Younger* abstention doctrine has been expanded to include civil proceedings that are akin to a criminal prosecution, including, in particular, State contempt proceedings. *Juidice v. Vail*, 430 U.S. 327 (1977); *Middlesex County Ethics Comm. v. Garden State B. Ass'n*, 457 U.S. 423 (1982); *Google, Inc. v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016).

In *Juidice v. Vail*, the Supreme Court extended the *Younger* abstention doctrine to cases involving state contempt proceedings.   The *Juidice* Court explained:

> The contempt power lies at the core of the administration of a State's judicial system. Whether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, ios labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal-court interference with the State's contempt process is 'an offense to the State's interest…likely to be every bit as great as it would be were this a criminal proceeding. *Juidice*, 430 U.S. 327, 335–36 (1977), citing *Ketchum v. Edwards*, 153 N.Y. 534, 539, 47 N.E. 918, 920 (1897) and *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, (1975).

The Fifth Circuit also recognizes that Federal courts should abstain from the review of a state court contempt motion that under the *Younger* doctrine.   *Kolwe v. Civ. & Structural Engineers, Inc.*, 20-30564, 2021 WL 1727609, at *3–4 (5th Cir. Apr. 30, 2021).   In <u>*Kolwe,*</u> the Court declined to pierce the style and form of Kolwe's contempt motion to assess whether it

presented a claim arising under federal law and held that the district court properly abstained from exercising that jurisdiction over this post-judgment contempt motion.  The Court noted that the "[t]he same federalism principle outlined in *Juidice*, however, counsels against this court making any substantive determination on the merits of Kolwe's contempt claim." *Kolwe,* 2021 WL 1727609, at *3.

The *Kolwe* Court expressly declined to adjudicate the merits of "a motion filed in state court and styled a motion for contempt" because "to do so would transgress the very principle of federalism [that] the rule [that contempt proceedings are non-removable] seeks to protect."  *Kolwe,* 2021 WL 1727609, at *3, citing, *Asher v. A.G. Edwards & Sons, Inc*., 272 Fed. Appx. 357, 358 (5th Cir. 2008).  Similarly, in *Asher*, the Fifth Circuit abstained from addressing the merits of a motion for contempt despite the defendant's argument that the motion is actually a disguised petition for damages subject to removal based on diversity.  The Court found that such was "a task for the state court that is alleged to have been offended."  *Id*.

It is undisputed that through his Motion for Preliminary Injunction the plaintiff is attempting to enjoin the City/Parish from proceeding in a Rule to Show Cause why attorney Thomas Frampton should not be held in contempt pursuant to Louisiana Children's Code art. 1509, which is currently pending in the East Baton Rouge Parish Juvenile Court.  Thus, the *Younger* abstention is triggered.

To overcome the *Younger* abstention, the plaintiff argues that an exception applies to override the doctrine because the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff.  The *Younger* exceptions are as follows: (1) [T]he state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is "flagrantly and patently violative of express constitutional prohibitions in every

clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or (3) application of the doctrine was waived. *Texas Ass'n of Business v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004).  In this matter the plaintiff has not challenged the constitutionality of a specific state statute, nor is there any evidence that Louisiana has waived the application of the *Younger* doctrine.

With respect to the first *Younger* exception, the Fifth Circuit explained: "[a] prosecution is taken in bad faith if state officials proceed "without hope of obtaining a valid conviction." *Okorie v. Mississippi Bd. of Med. Licensure*, 739 Fed. Appx. 301, 302 (5th Cir. 2018); *Gates v. Strain*, 885 F.3d 874, 881 (5th Cir. 2018). The 'bad faith' exception is narrow and should be granted parsimoniously." *Gates*, 885 F.3d at 881.  Plaintiff bears the burden to establish actual proof of bad faith. *Id*.

In support of establishing that the City/Parish's retaliatory motivation the plaintiff relies on a statement in the Petition to Disclose Juvenile Records that the City of Baton Rouge has received a substantial amount of negative correspondence from the public.[1]  A review of the petition clearly demonstrates that this allegation was made by the City/Parish in support of its request to release the body camera footage, not in support of the Rule to Show Cause.  Specifically, Paragraph 5 states immediately thereafter: "In an effort to reduce the potential for civil unrest, Chief Murphy J. Paul desires to publicly release portions of the following body camera and/or in car camera video footage."  Paragraphs 8, which is alleged after the conclusion of the paragraphs concerning the request for release of videos, is the only allegation in the petition directed at the Rule to Show Cause and contains no indication of retaliatory motive.  The sole basis for the Rule to Show Cause

---

[1] Plaintiff Exhibit A, Petition to Disclose Juvenile Records, ¶ 4.

is "the public release of the videos prior to seeking authorization with this Court under Louisiana Children's Code art 412." Plaintiff's manipulation of the words in the petition is insufficient to establish bad faith.

Plaintiff also relied on the fact that Mr. Frampton received the court filing during a BRPD press conference to demonstrate a retaliatory motive. This coincidental fact is insufficient to establish a retaliatory motivation. The Petition to Disclose the Juvenile Records and Rule to Show Cause was filed in Juvenile Court in urgency to try obtain the records in time for a press conference that was swiftly scheduled for on May 28th. In additional to formal service, the defendant was obligated to notify Mr. Frampton of the filing pursuant to the Certificate of Service requirements. The order was signed around 12 p.m. on May 28, 2021. When counsel returned to the office, the City/Parish's server and internet were down. [2] Counsel continually to tried to scan the notice of the filing to her email until 2 p.m., when the office closed early for the Memorial Day holiday, but was unsuccessful due to the City/Parish server being offline. The City/Parish server came back online later that afternoon. Counsel emailed the filing from her house through her phone, upon noticing receipt of the scanned copy after the server was back online. It was merely a coincidence that the email was sent during the conference. Moreover, counsel had no knowledge, until recently notified by the plaintiff, that the body camera footage at issue was filed in the public record of this Court.

Other than conclusory allegations, the plaintiff has no evidence whatsoever to establish that the filing of the Rule to Show Cause was motivated by an alleged Constitutionally protected activity.

---

[2] Defendant's Exhibit A, Declaration of Deelee Morris.

Pg. 7

Plaintiff's final effort to establish a retaliatory motive was to argue that such motive was indicated by moving for contempt of a proceeding that they knew did not exist.[3]  As thoroughly briefed below, the City/Parish firmly believes that all records of arrests under the jurisdiction of Juvenile Court are protected under Art. 412 and the public release of any such records require a Court unless an exception under Art. 412 applies.  This is further demonstrated by the fact that the City/Parish sought its own court order to release the records at issue.  This establishes the City/Parish's legitimate belief that an order was necessary to release its own records, and that the mandatory language of Art. 412 attaches to each possessor of the records in turn, such that a breach of the obligation of privacy by one possessor does not waive the privacy interest as to subsequent recipients.

Even if the City/Parish was incorrect in its interpretation of the law, which heavily contested, it at minimum, such interpretation was extremely reasonable (as demonstrated below), and initiating the Rule to Show Cause is mandated under the Article.

La. Child. Code Ann. art. 412 provides in relevant part:

A.  Records and reports concerning all matters or proceedings before the juvenile court, except traffic violations, are confidential and shall not be disclosed except as expressly authorized by this Code. Any person authorized to review or receive confidential information shall preserve its confidentiality unless a court order authorizes them to share with others.

La. Child. Code Ann. art. 102 provides guidance on the interpretation of the provisions of this Code, stating they "shall be ***liberally construed*** to the end that each child and parent coming within the jurisdiction of the court shall be accorded due process and that each child shall receive,

---

[3] To the extent the plaintiff tries to demonstrate the City/Parish's doubt in the Art. 412 protection based on conversation with counsel, the plaintiff's characterizations of that conversation are inaccurate.  See Plaintiff Exhibit B, email conversation string between William Most and Deelee Morris.

preferably in his own home, the care, guidance, and control that will be conducive to his welfare," (emphasis added).

Defendant argued that the confidentiality provision of Art. 412 is not applicable because there was no underlying juvenile matter or proceeding before juvenile court.  In this case, a juvenile was arrested for LSA-R.S. 40:966(E) and issued a custodial agreement pursuant to La. Child. Code art. 814(B)(1).[4]  Pursuant to custodial agreements, a juvenile arrestee is released to the custody of his parent or guardian based on "upon their written promise to bring the child to court at such time as may be fixed by the court."  La. Child. Code art. 814(B)(1).  This language clearly evidences that the arrest charges are a matter/proceeding before the juvenile court.

Moreover, a "juvenile proceeding" or "juvenile case" is defined in the Children's Code as a "proceeding or case in which the court is exercising juvenile jurisdiction." La. Child. Code art. 116(11).  By separating these terms, the law makes it clear that a "proceeding" is distinct from a "case."  An arrest charge against a juvenile is the institution of a "proceeding" and it is undisputed that the Juvenile Court has exclusive jurisdiction over such charges. La. Child Code art. 302, 303 801 and 804.[5]  The liberal exercise of Art. 412 over all juvenile arrest records is further

---

[4]  The Custodial Agreement issued in this matter is a record that is also protected under Art. 412 and cannot be released without a court order from Juvenile Court.  In the event that the plaintiff contests this fact, the City/Parish will take the necessary steps to obtain a copy of this record, and supplement it to the record.
[5] La. Child. Code Ann. art. 302 provides: Juvenile jurisdiction shall be exercised as follows:
(1) Special juvenile courts created by law for Caddo, Orleans, Jefferson, and East Baton Rouge Parishes shall have exclusive original juvenile jurisdiction, and any other jurisdiction conferred by the statute creating them, in the parish or parishes for which they are created. Judges of these courts shall exercise their juvenile jurisdiction according to the provisions of this Code.

La. Child. Code Ann. art. 303 provides: A court exercising juvenile jurisdiction shall have exclusive original jurisdiction over:
(1) Delinquency proceedings pursuant to Title VIII

La. Child. Code Ann. art. 801, i.e. Title VIII provides:
The purpose of this Title is to accord due process to each child who is accused of having committed a delinquent act and ensure that he shall receive, preferably in his own home, the care, guidance, and control that will be conducive to his welfare and the best interests of the state and that in those instances when he is removed from the control of

demonstrated by the inclusion of the generalized term "all *matters*…before the juvenile court" (emphasis added). Thus, it is abundantly clear that any records, including body camera footage, concerning the juvenile arrest charges are clearly protected under Art. 412, even if the charges are never assigned a case number or have a formal hearing in Juvenile Court.

A review of past versions of Art. 412 also establish that the spirit of the law encompasses confidential protection of all law enforcement records, including body camera footage at issue. Prior to 2003, Art. 412(B) stated: [e]xcept as provided in Paragraph A of this Article, records and reports of the court, probation officers, and *law enforcement agencies* concerning matters or proceedings in court are confidential and shall not be disclosed. Children's' Code - Confidentiality of Records; Definitions; Mandatory Abuse Reporting; Adoptions, 2003 La. Sess. Law Serv. Act 567 (H.B. 171) (WEST).  This Article was entirely rewritten in 2003 in order to reorganize and harmonize the various legislative amendments that have occurred since 1991 when it was first enacted as part of the Children's Code and the revised Paragraph A maintains the general principle that records and other case specific information in juvenile court proceedings are confidential and are not to be disclosed to any individual, agency or to the public unless expressly authorized by this Code.  See: La. Child. Code. Art. 412, comment (a) 2003.

Defendant's interpretation of the law would lead to absurd results.  Juveniles who are booked into a juvenile detention center on charges are assigned Juvenile Court case docket

---

his parents, the court shall secure for him care as nearly as possible equivalent to that which the parents should have given him.

La. Child. Code Ann. art. 804 provides:
(3) "Delinquent act" means an act committed by a child of ten years of age or older which if committed by an adult is designated an offense under the statutes or ordinances of this state, or of another state if the offense occurred there, or under federal law, except traffic violations.

numbers, and their arrest records are clearly precluded from disclosure under confidentiality under Art. 412. However, if the defendant's interpretation of Art. 412 were to prevail, a juvenile who is offered leniency and issued a custodial agreement for an arrest, in lieu of detention, would not be granted the same confidentiality to his arrest records. This directly contravenes the spirit of the law which is to protect the privacy interests of juveniles from stigma and public scrutiny concerning arrests. Moreover, it would lead to the public release of a significant amount of juvenile arrest records and prosecutorial files.

Similar confidential protection of juvenile arrest records was afforded by the Nevada Supreme Court in *Republican Attorneys Gen. Assn. v. Las Vegas Metro. Police Dept.*, 458 P.3d 328, 334 (Nev. 2020). In *Republican Attorneys Gen. Assn.*, the Nevada Supreme Court upheld the district court's finding that all portions of police bodycam footage, including portions of footage of parent of juvenile contained confidential juvenile justice information and such privilege could not be waived. The Court considered the confidentiality provisions provided in Nev. Rev. Stat. Ann. § 62H.025 which provides: "Juvenile justice information is confidential and may only be released in accordance with the provisions of this section or as expressly authorized by other federal or state law." In its analysis of this language, the Nevada Supreme Court held:

> NRS 62H.025 unambiguously does not require juveniles to be brought before the juvenile court for information to be considered "juvenile justice information." See *In re CityCenter*, 129 Nev. at 673-74, 310 P.3d at 578 (providing that, when a statute is unambiguous, the court will apply its plain meaning). Indeed, NRS 62B.330(1) explicitly provides that "the juvenile court has exclusive original jurisdiction over a child ... who is alleged ... to have committed a delinquent act."

*Republican Attorneys Gen. Assn.*, 458 P.3d at 334-5 (Nev. 2020).

The Nevada Supreme Court upheld the district courts finding that the bodycam footage contained juvenile justice information in part because the footage directly relates to a juvenile-

involved incident and the arrest of juveniles. *Id* at 335. "When juveniles are handcuffed and under the physical supervision of the police, as here, they are under the direct authority of law enforcement. Even if never brought before a juvenile court, at the time of arrest there is an allegation that the juveniles committed a delinquent act and they are presumed by the officers to be in need of supervision. Cf. NRS 62C.010(1). Any information directly related to the arrest of juveniles therefore constitutes juvenile justice information." *Id*.

*Republican Attorneys Gen. Assn*., is analogous to the present case particularly in light of the very similar language is recited in La. Child Code Arts. 302, 303, 801 and 804. While there is no Louisiana case law available directly addressing this matter, the Nevada Supreme Court case offers considerable guidance in the interpretation of Art. 412.

Defendant also asserted that the caption of the Petition to Disclose Records evidences a lack of "proceeding" for purposes of Art. 412. A separate "In re:" caption is used in these types of matters because the City/Parish is never a party to juvenile prosecutions, and is unable to file a pleading in a prosecutorial case. The need for a separate case assignment is warranted in all petitions seeking disclosure of confidential records filed by *any* non-party to the juvenile prosecution.

Defendant next argues that the body camera footage of the juvenile's arrest was not confidential because it was already public through its production in discovery during an adult prosecution in federal court, making them the property of Mr. Clarence Green as the defendant in that prosecution. Receipt of records through the criminal discovery process does not make the records public, particularly when those records include confidential juvenile arrest information. Defendant also asserted that portions of the videos were filed into the public docket in the Middle District of Louisiana, making them accessible to any member of the public. Assuming the footage

of the juvenile arrest was filed into the public record of that case, the mistake of either (1) not removing footage pertaining to the juvenile arrest and/or (2) filing the video under seal does not waive the statutorily mandated confidentiality provisions of Art. 412.    The mandatory confidentiality and enforcement provisions of Art. 412 are separate and distinct from the law concerning public records.[6]  Art. 412 does not contain any waiver provision. In fact, Art. 412(L) contains a provision specifically addressing the illegality of re-dissemination of confidential information which states: "[j]uvenile records or information from juvenile records disclosed pursuant to this Article shall be marked 'UNLAWFUL DISSEMINATION OF THIS INFORMATION IS PUNISHABLE AS A CONSTRUCTIVE CONTEMPT OF COURT PURSUANT TO LOUISIANA CHILDREN'S CODE ARTICLE 1509(E)'.

As Mr. Frampton was not the attorney for Mr. Green in his criminal prosecution, the release of the videos containing the juvenile arrest to Mr. Frampton was improper without a Court order from Juvenile Court. Regardless, even if Mr. Frampton received this record properly, Art. 412 makes it very clear that Mr. Frampton's subsequent release of the videos was illegal disclosure unless he had obtain a court order to do so.

Defendant also argued Art. 412 is inapplicable because the video was released with the consent of the family whose privacy interests were implicated.[7]  Defendant claims that Article 412 only prohibits others from sharing juvenile records, but it does not prohibit the juvenile from doing so where the only privacy interest implicated is that of the juvenile.  However, there is no language in Art. 412 that states the juvenile or his/her parents or guardians may waive the confidentiality

---

[6] Louisiana public records law relies on Art. 412 to prevent the disclosure of juvenile records through a public records request.  LSA-R.S. 44.4.1.

[7] Consent to dissemination is only a defense to criminal liability only in La. R.S. 14:133.7, Publication of certain criminal record information or juvenile record information prohibited, not in Contempt proceedings under Art. 412,

provisions of the statute.  The only exception to the confidentiality provision which allows release

without a court order are found in Art. 412(D).  "Exceptions are listed in art. 412. Absent a listed

exception in art. 412, acknowledgement of a record is prohibited."  La. Atty. Gen. Op. No. 03-

0026 (Jan. 30, 2003). The requirements of Art. 412 ensure oversight for the best interest of the

child and prevents potential exploitation of a juvenile's privacy interests in an arrest, by anyone,

including family members.  Consent to release of confidential records is only a *factor* to be

consider when presented in a petition filed under Art. 412(E) in Juvenile Court, which was not

done in this case.

Other than conclusory allegations, the defendant has no evidence whatsoever to establish

that the filing of the Rule to Show Cause was motivated by an alleged Constitutionally protected

activity.  As thoroughly briefed above, the City/Parish's belief that the record is protected under

Art. 412, and release under these circumstances required a Court order.

It should also be noted that Mr. Frampton was made aware of the confidential provisions

of Art. 412 by the City/Parish well in advance of his public disclosure.  Mr. Frampton submitted a

public records request to the Baton Rouge Police Department on January 21, 2021 seeking, among

other records, "all body-worn camera footage and dash-camera footage from officers involved in

the above incidents [BRPD file No. 2020-225].[8]  On or around February 4, 2021 the counsel

contacted Mr. Frampton via phone to discuss the implications of La. Child. Code art. 412 and the

requirements of getting a court order from Juvenile Court as it pertained to records of the juvenile's

arrest, including specifically the body camera footage.[9]   The undersigned followed that

---

[8] Defendant's Exhibit B, email chain between Mr. Frampton and Deelee Morris
[9] Defendant's Exhibit, A, Declaration of Deelee Morris.

conversation with email summarizing the conversation.[10]  Mr. Frampton subsequently cancelled his request for the videos.[11]  These facts further demonstrate the City/Parish has a legitimate belief that the record at issue is subject to Art. 412.

Contrary to the defendant's arguments, City/Parish only seeks to protect the confidentiality provisions established by law to protect a child's best interest.  It is obvious the legislature takes the privacy interests seriously as demonstrated by implementation of the penalties set forth in the statute.[12]  Art. 412 enforces the policy of confidentiality by directing that a violation is punishable as a constructive contempt of court. "A breach of the policy of confidentiality is a serious dereliction, particularly when committed by an individual or agency that often interacts with the juvenile courts and thus should be aware of the restrictions upon the release of information. Confidentiality has governed juvenile court practice in this state since the first juvenile statute of 1916."  See, comment 2003 (j), La. Child. Code Art. 412.  The undersigned counsel directed Mr. Frampton to the relevant statute and tried to explain to him the proper channel to achieve public release of the records at issue.  This demonstrates the City/Parish takes absolutely no issue with the release of footage pertaining to a juvenile arrest, as long as there is a gatekeeper making sure that such release will not impact the juvenile's welfare.  That is why the provisions of Art. 412 were enacted and should continue to be upheld. The City/Parish is neither a duck or a chicken, as the plaintiff's continual mischaracterizations would lead this Court to believe.  It is simply an interested party trying to uphold the Louisiana Children's Code.

---

[10] Defendant's Exhibit B.
[11] Defendant's Exhibit B.
[12] See La. R.S. 14:133.7, supra, and La. R.S. 44:4.1, Exceptions, subpart (B)(39), excluding juvenile records from the general openness doctrine of the Public Records law. The Courts also take the obligation seriously, see Louisiana District Court Rules Rule 42.3, Records and Information Sharing, incorporating the Children's Code by reference, to reinforce the confidentiality of juvenile proceedings and records.

In the alternative, the City/Parish further suggests that the dearth of case law interpreting

La.Child. Code art. 412 and what constitutes a "case or proceeding" indicates that this Court should

decline jurisdiction, as it will be establishing res nova interpretation of a specialized area of state

law. Justice Stewart's dissent in *Juidice v. Vail*, supra, at 347-348, indicates that when a federal

court is in uncharted waters of state law, abstention is appropriate:

> When a federal district court confronts such uncertainty in state law, its proper course is to abstain from final resolution of the federal issues until the state courts have been accorded an opportunity authoritatively to interpret the state statutory scheme being challenged. *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. The state-court construction may obviate or significantly modify the federal questions seemingly presented, thus avoiding 'unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law and premature constitutional adjudication.' *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50. Those considerations were sacrificed here, when the District Court nevertheless proceeded to measure the ambiguous provisions of state law against the Due Process Clause of the Fourteenth Amendment.
>
> ****
>
> Both types of 'abstention,' of course, serve the common goal of judicial restraint as a means of avoiding undue federal interference with state goals and functions. But there is a significant difference in result between the two. Under *Pullman* abstention, the federal court may retain jurisdiction pending state-court interpretation of an ambiguous statute, while under *Younger* it may not. The *Pullman* approach thus has the advantage of not altogether foreclosing access to federal courts to vindicate federal rights, while still avoiding needless friction in federal-state relations.

The federal courts are prone to avoid questions of domestic law,[13] and federal intervention

in such cases is rare. The City/Parish would suggest that if the Court is not inclined to decline

intervention is a novel application of state law entirely, by application of *Younger*, then the Court

should consider allowing the state courts to interpret the application of its own laws prior to any

---

[13] *Ex parte Burrus*, 136 U.S. 586, 593-94, 10 S.Ct. 850, 34 L.Ed. 500 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.")

determination by this Court of how those laws are applied, and defer its own rulings by way of *Pullman* abstention.

## II. The Plaintiff's Motion for Preliminary Injunction Should be Dismissed for Failure to State a Claim

To secure a preliminary injunction the plaintiff must establish four elements: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F. Supp. 3d 604, 635 (M.D. La. 2015), citing, *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir.2009); accord, e.g., *Wilson v. Office of Violent Sex Offender Mgmt.*, 584 Fed.Appx. 210, 212 (5th Cir.2014). "'A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right.'" *Gaspard v. Robert*, CV 16-788-JWD-RLB, 2016 WL 7650669, at *1 (M.D. La. Dec. 6, 2016), *citing*, *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). Thus, the movant must clearly carry the burden of persuasion on all four of the above prerequisites. *Truman v. LeBlanc*, CV 16-339-JWD-RLB, 2017 WL 1734041, at *1 (M.D. La. May 2, 2017). As thoroughly discussed above, the plaintiff does not have substantial likelihood of success on the merits, accordingly the City/Parish will move to the next elements necessary to succeed with a preliminary injunction.

### *A Substantial Threat of Irreparable Injury to Mr. Frampton Does Not Exist*

Plaintiff also cannot show that he will suffer irreparable injury as result of the Rule to Show Cause hearing. Juvenile Court permits hearings to be conducted by zoom upon request, which has now been requested. To the extent the plaintiff believes the merits of the matter are unfounded, he has addressed these arguments currently pending in a Motion to Dismiss filed in Juvenile Court.

If the Court grants his Motion, presumably the hearing with be cancelled in advance or will decline to hold him in Contempt at the zoom hearing based on these arguments.  Plaintiff may then proceed with his civil remedy, the Complaint filed in Federal Court.  If the plaintiff is found to be in contempt, he has the right to file a writ or suspensive appeal to the appropriate jurisdiction(s) to have the juvenile court actions reviewed.  Accordingly, the plaintiff cannot show the existence of a substantial threat of irreparable injury.

### *The Threatened Injury Does Not Outweigh the Resulting Harm If the Injunction is Granted*

In the event the plaintiff is deemed to satisfy the prior elements, any alleged harm suffered by the plaintiff is outweighed by the City/Parish's interest in maintaining the sanctity of confidentiality in juvenile arrest records.  Upon setting a precedent that certain juvenile arrest records are not confidential, volumes of law enforcement and prosecutorial files will be subject to public records requests and those previously protected under Art. 412 will potentially be subject to unwanted publicity that could greatly impact their future welfare.

### *The Grant of an Injunction Will Disserve the Public Interest*

As previously discussed, the protection of juvenile's welfare is at the forefront of all of these issues.  Juveniles are not best served with the loss of confidentiality in their arrest records.  Juveniles and their families have a right to voice their opinions and concerns against civil rights violations, and there are mechanisms in place to allow them to uses their records (if they so choose) to support those rights.  However, impeding a State Court from addressing potential violations of the stringent provisions of Art. 412 will open the doors for persons who do not have juveniles' best interests in mind to obtain arrest records and exploit the loophole that the plaintiff seeks to create, by excluding records of arrest by way of custodial agreements from the protections provided by the statutory structure.

# CONCLUSION

With regard to the Motion to Dismiss under Rule 12(b)(1) and 12(b)(6), the plaintiff has failed to establish any bad faith or harassing motive on behalf of the defendants.  Accordingly, abstention is proper under *Younger v Harris*.[2]   In the alternative, abstention is required pending the state courts' interpretation of a novel issue of state law, pursuant to *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).  Accordingly, the Court should recognize its lack of jurisdiction over the claims, and dismiss the suit in whole or in part, pending resolution of the state's interests by the state's courts, prior to ruling on the merits of the allegations.

Mere conclusory allegations, and legal argument posed as factual allegations, do not satisfy the pleading requirements of the federal system. The allegations of the petition therefore fail to state a claim upon which relief can be granted, and warrant dismissal by application of Federal Rule of Civil Procedure 12(b)(6).

In the event the Court exercises jurisdiction over the plaintiff's case, a review of the substantive arguments against the plaintiff's motion in support for Preliminary Injunction also establishes that the extraordinary remedy is not warranted in this case.  Plaintiff cannot show a retaliatory intent by mere conclusory allegations and coincidence, because there is no retaliatory intent to discover.

---

[2] 401 U.S. 37, 43, 91 S. Ct. 746, 750, 27 L. Ed. 2d 669 (1971)

Accordingly, the defendant respectfully requests that this Honorable Court dismiss the Motion for Preliminary Injunction filed by the plaintiff with prejudice.

RESPECTFULLY SUBMITTED,

**By Attorneys:**
**Anderson O. Dotson**
**Parish Attorney**

***/s/ Joseph K. Scott, III***
**Anderson O. "Andy" Dotson, III (#26865)**
**Deelee Morris (#28775)**
**Joseph K. Scott, III (#28223)**
**222 St. Louis Street, 9th Floor**
**Baton Rouge, LA 70802**
**Telephone: (225) 389-3114**
**Facsimile:  (225) 389-8736**
**Email**: ADOTSON@brla.gov
**Email: DSMorris@brla.gov**
**Email: jkscott@brla.gov**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**THOMAS FRAMPTON**

**VERSUS**

**CITY OF BATON ROUGE/PARISH OF EAST**
**BATON ROUGE, ET AL.**

**CIVIL ACTION**

**NO.  3:21-CV-362-JWD-SDJ**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**CERTIFICATE**

I hereby certify that a copy of the foregoing *Consolidated Memorandum in Support of Motion to Dismiss Under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) and Memorandum in Opposition to Motion for Preliminary Injunction* was this date electronically filed with the Clerk of Court using the Court's CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.  Notice will be mailed to any party or counsel not participating in the Court's CM/ECF system by this date depositing same in the United States Mail, first class postage prepaid, and properly addressed.

Baton Rouge, Louisiana this  **5th**  day of **July**, 2021.


*/s/ Joseph K. Scott, III*
**Joseph K. Scott, III**